UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

        Plaintiff,

v.

Gino Morgan,

        Defendant.

Criminal No. 20−cr−20345

Hon. Denise Page Hood
United States District Judge

---

**Government's Response in Opposition to Morgan's Motion to Suppress**

---

This Court should deny Morgan's motion to suppress because probable cause existed to believe that evidence would be found in his apartment. Contrary to Morgan's argument, the affidavit—which contained information from a reliable informant, Morgan's social media account, the Detroit police, Morgan's sister, and an experienced ATF agent—established a nexus between his apartment and his illegally possessed guns.

**Brief**

On July 22, 2020, Magistrate Judge Elizabeth Stafford authorized the search of an apartment Morgan shared with his girlfriend for guns, drugs, and cellular telephones that were evidence of Morgan's illegal weapons possession and drug trafficking. The warrant was supported by probable cause because, "given all of the circumstances set forth in [the] affidavit…there [was] a fair probability that

contraband or evidence of a crime [would] be found in a particular place." *Illinois v. Gates*, 462, U.S. 213, 238 (1983).

Probable cause is a "practical, nontechnical conception" based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 231. It is a "common-sense decision, based on the totality of the circumstances, not line-by-line scrutiny of the affidavit." *United States v. Brown*, 857 F.3d 334, 339 (6th Cir. 2017). Once a magistrate has determined the existence of probable cause, that decision should only be reversed if it was arbitrarily made. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 914 (1984). This deferential standard "further[s] the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984).

Whether an affidavit establishes probable cause is determined solely by "look[ing]…to the four corners of the affidavit." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (citation omitted).

**A. The affidavit established a sufficient nexus between illegal activity and the place to be searched.**

A warrant must establish a "minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006) (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004)). And "[t]he issuing judge or magistrate "may give considerable weight to 'the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found' and is 'entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996)(Citations omitted).

The affidavit here contained facts from five different sources. Taken together, these facts, coupled with the opinion of the investigator, established more than a "minimally sufficient nexus" between Morgan's guns and his apartment.

*First*, the affidavit established that a reliable informant had known Morgan for years. (Att. A, ¶ 7-8). Prior to December 2019, the informant knew Morgan to be a large-scale drug trafficker and had personally seen Morgan in possession of heroin, methamphetamine, and marijuana. (Att. A, ¶ 8). As of December 2019, the informant knew Morgan to primarily sell methamphetamine, but also to traffic heroin, cocaine, and marijuana. (Att. A, ¶ 8). And finally, the informant had observed Morgan in possession of firearms on many occasions. (Att. A, ¶ 9).

*Second*, the affidavit established that from September 2019 through June 2020, Morgan sold marijuana and boasted about his possession of firearms through his social media.

- Morgan posted a picture of himself with a handgun, which he captioned on September 24, 2019, "Lately I've been feeling like the old me." (Att. A, ¶ 11).

- In December 2019, Morgan posted a picture of himself holding a rifle with an attached high capacity magazine. On the day he posted this picture—December 15, 2019—Morgan commented that he "had enough shots now." (Att. A, ¶ 12).

- On December 20, 2019, Morgan posted a picture of himself holding a Glock handgun. (Att. A, ¶ 13).

- On January 14, 2020, Morgan posted a picture of an FN Pistol with a loaded magazine with ammunition. (Att. A, ¶ 14).

- On February 14, 2020, Morgan posted a picture of himself with an AK style pistol containing a high capacity magazine. He commented, "I stay with that sword like I'm dark vader just know I ain't running." (Att. A, ¶ 15).

- On February 21, 2020, Morgan posted pictures and prices of marijuana. (Att. A, ¶ 16).

- On February 27, 2020, Morgan posted another image of marijuana for sale. (Att. A, ¶ 17).

- On March 2, 2020, Morgan posted an Instagram Live video to his account in which he says " "you know we ridin' man, yeah, fuck is you talkin' about" while holding a magazine with ammunition. (Att. A, ¶ 18).

- On June 4, 2020, Morgan posted several pictures in which he is posing in front of a handgun. (Att. A, ¶ 21).

- On June 10, 2020, Morgan posted pictures of himself holding three different assault-style rifles. (Att. A, ¶ 22).

- On June 26, 2020, Morgan again advertised marijuana for sale. (Att. A, ¶ 23).

*Third*, the affidavit established that on March 12, 2020, Morgan was in possession of ammunition. According to the affidavit, Morgan was shot on that day and drove himself to the police department to get help. Morgan was taken to the hospital, but his car was towed and searched. Detroit police officers found and seized a magazine that was loaded with 30 rounds of ammunition inside Morgan's vehicle. (Att. A, ¶ 20). The magazine was from an FN pistol, which is the same style pistol Morgan was in possession of in his June 4 Instagram post. (Att. A, ¶ 21).

*Fourth*, the affidavit established that on July 2, 2020—less than three weeks prior to the authorization of the warrant—Morgan's sister reported that he was in possession of a firearm. Indeed, Morgan did not just possess the gun, he fired it at his sister. (Att. A, ¶ 24).

*Fifth*, the affidavit established that Morgan lived in the apartment that was to be searched. On June 10, 2020, the informant told the affiant that Morgan was staying in the area of Canton, Michigan, "somewhere off Joy Road." (Att. A, ¶ 25). This information was corroborated by surveillance of Morgan near the residence in June and July—including on the day before the magistrate judge authorized the warrant. (Att. A, ¶¶ 28 – 35). This information showed that Morgan lived at the residence to be searched when he was posting pictures of himself with guns, (Att. A, ¶ 22), advertising marijuana, (Att. A, ¶ 23), and when he shot at his sister. (Att. A, ¶ 24).

*Sixth*, the affidavit established that based on an ATF agent's five years of experience and training, those who illegally possess firearms often do so in their homes, where they are easily accessible. (Att. A, ¶ 37). The affiant also pointed out that Morgan posted images of his guns to his Instagram account, something that is commonly done with a cellphone; (Att. A, ¶ 40); and that guns are normally retained for extended periods. (Att. A, ¶ 39).

Morgan argues that the photographs in the affidavit failed to establish a nexus between his illegally possessed firearms and his residence. But the affidavit contained much more than photographs. The affidavit established that Morgan

illegally possessed guns for years. He warned others that he "stay[ed]" with them. He traveled with them. And he used them.

The affidavit also includes the opinion of the affiant, who had five years of experience investigating gun crimes, that individuals like Morgan who illegally possess firearms commonly store them at in their residence in order to easily access them. This was a reasonable opinion for the affiant—and a legally permissible inference for the magistrate judge—to draw. *See Williams*, 544 F.3d at 688 ("Much like a bank robber would keep the proceeds and instrumentalities of his robbery in his home, so too could Williams be expected to keep the instrumentalities of his criminal activity at his residence."). "The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime." *United States v. Green*, 634 F.2d 222, 226 (5th. Cir. 1981). Accordingly, "it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there." *Williams*, 544 F.3d at 686-87; see also *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985)(noting that a court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the

evidence and the type of offense). The totality of these facts, opinion, and inference establishes a sufficient nexus between the guns and Morgan's residence.

Morgan argues that under *United States v. Brown*, 828 F. 3d 375 (6th Cir. 2016), magistrates can no longer infer that drug dealers keep evidence of their drug dealing at home. But the magistrate judge here did not have to make an inference about Morgan's drug dealing. Here, the crime being investigated was felon in possession of a firearm. Unlike a drug trafficking offense, this type of crime is not a one-time occurrence, but "a continuing offense that ceases only when the felon relinquishes possession." *United States v. Goodwin*, 552 Fed. App'x. 541, 545 (6th Cir. 2014). Unlike drugs, guns are useful to their owners when they are accessible to their owners and so are kept nearby. And since felons are unable to obtain firearms through legitimate business dealings, firearms in possession of felons have enduring utility. *United States v. Bland*, No. 18-CR-20555, 2018 WL 6171609, at *2 (E.D. Mich. Nov. 26, 2018). Thus the magistrate judge could properly infer that Morgan possessed his guns where they would be useful to him—in his home.

Morgan also argues that the affidavit could be stale because the photos could have been taken at some point in the past and uploaded on the dates set forth in the warrant. This argument not only ignores the other information in the affidavit, including Morgan's possession of a gun on July 2, 2020, when he shot at his sister, it ignores Morgan's descriptions of the photos. In September 2019, Morgan posted

a picture of himself with a gun and explained "Lately I've been feeling like the old me." (Att. A, ¶ 11). In December, he posted a picture of himself holding a rifle with a high capacity magazine and stated that he "had enough shots now." (Att. A, ¶ 12). In March, ten days before he was shot, he posted a picture of himself again with a gun and cautioned others that he "stay with that sword like I'm dark vader just know I ain't running." (Att. A, ¶ 15). Morgan's own words—"lately" and "now"—provide the temporal context that he argues is missing. And warning others that he "aint running" and "stay[s]" with a "sword" while posing with a gun, only makes sense in the present tense. Unlike controlled substances, firearms are not perishable items; "firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time." *United States v. Goodwin*, 552 Fed.Appx. 541, 544, (6th Cir. 2014), quoting *United States v. Pritchett*, 40 Fed.Appx. 901, 905-06 (6th Cir. 2002). A common sense reading of Morgan's comments, together with the pictures, his long history of possessing guns, and his possession of a gun just three weeks before the warrant demonstrates that the affidavit was not stale.

### B. The good faith exception applies even if there was an insufficient nexus set forth in the affidavit.

The affidavit presented to the magistrate established probable cause to search Morgan's residence. However, even if probable cause was somehow lacking, the "good faith" exception announced in *United States v. Leon*, 468 U.S. 897 (1984), applies.

A magistrate's error in issuing a search warrant does not necessarily require suppression of evidence. See *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006). The *Leon* court explained that when an officer relies on a search warrant later invalidated, evidence obtained from the search is admissible unless reasonable officers would not have believed the warrant constitutionally permissible. *Id.* The judge issuing the warrant—not the officer applying for one—has responsibility for determining whether probable cause exists, and the rule excluding unlawfully obtained evidence has little deterrent effect when applied to objectively reasonable law enforcement activity. *Id.* at 919-22; *United States v. McCoy*, --- F.3d ---, 2018 WL 4496396, *3 (6th Cir. 2018). In other words, any benefit derived from excluding evidence in these situations does not justify the substantial costs of exclusion. *Id.*

To determine whether the *Leon* good-faith exception applies, a court must decide "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon* at 922 n.23. For an officer's reliance on a warrant to have been reasonable, the application must have provided "a minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (citations omitted). The affidavit need not establish a "substantial basis," only "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to

be searched." *United States v. White*, 874 F.3d 490, 497 (6th Cir.2017) (citation and internal quotations omitted). Further, "reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *Id.* at 500.

In this case, most reasonably well trained officers would infer that it was likely that the firearms that Morgan possessed in the photograph would be kept at his own residence—the same inference allowed by courts on countless prior occasions, that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there. *See Williams*, 544 F.3d at 688; *O'Conner*, 723 Fed.Appx. 310; *see also United States v. Sneed*, 385 Fed.Appx. 551, 559–60, (6th Cir.2010) ("we believe that the good faith exception applies here. To begin with, the court has noted that reasonably well trained officers may infer a nexus between a place to be searched and items sought, even when the affidavit fails to establish probable cause."). In light of this framework, the affidavit in this case was not so lacking in indicia of probable cause as to render it arbitrary.

Morgan argues that the good faith exception should not apply because the affiant was not candid about the Instagram platform. He complains that the affidavit did not explain that pictures can be taken at one point in time and uploaded to Instagram at another. But this information—which is nearly universally understood—did not affect the probable cause determination. As set

forth in the probable cause section above, Morgan described possessing some of the firearms in his pictures in the present sense. And beyond this, the affidavit established that he had possessed guns for years, including within three weeks of the date the magistrate judge authorized the warrant. Because the affiant did not knowingly or recklessly omit material information from the affidavit, the good faith exception applies. *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006).

    For all these reasons, Morgan's motion should be denied.

Respectfully Submitted,

MATTHEW SCHNEIDER
United States Attorney

s/ CRAIG F. WININGER
Assistant United States Attorney
211 Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9569
craig.wininger@usdoj.gov
P57058

Dated: November 13, 2020

## Certificate of Service

I hereby certify that on November 13, 2020, I electronically filed the Response for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system, which will send notification of such filing to all counsel of record via electronic mail.

s/ CRAIG F. WININGER<br>Assistant United States Attorney