**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CASE NO. 20-20345
HON. DENISE PAGE HOOD

GINO MORGAN,

    Defendant.

_____/

**ORDER DENYING MOTION TO**
**SUPPRESS SEARCH WARRANT [#24]**

**I.   Introduction**

Defendant was originally charged in a Complaint on July 23, 2020. On August 5, 2020, Defendant was indicted on one charge of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 12. On October 22, 2020, Defendant filed a Motion to Suppress Search Warrant ("Motion to Suppress"). [ECF No. 24] The Motion to Suppress has been fully briefed, and a hearing is scheduled for December 14, 2020. For the reasons that follow, the Court denies the Motion to Suppress.

**II.   Background**

The Government states that the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") began its investigation of Defendant in the fall of 2019 after learning of his suspected involvement in armed drug dealing on the east side of Detroit. During that investigation, the ATF agents learned more about Defendant from: (1) representatives of the Detroit Police Department's 9th Precinct; (2) a person

they claim is a reliable confidential source; and (c) Defendant's own social media accounts.

ATF's source reported that Defendant was often in possession of firearms. Defendant operated an Instagram account under the username "big__rizz" and routinely posted pictures of himself in possession of firearms. The Government has attached eight such exhibits of Defendant possessing firearms during Defendant's detention hearing and has included them in its response brief. A brief summary of eight Instagram posts by "big__rizz" between September 2019 and June 2020 is set forth below:

- September 24, 2019 – Defendant is pictured with what appears to be a pistol in his waistband, containing a high capacity magazine. The caption of the photo states, "Lately I've been feeling like the old me."

- On or about December 15, 2019 – Defendant is shown in possession of what appears to be an AK-style firearm containing a high capacity magazine, with the comment "had enough shots now."

- On December 20, 2019 – Defendant holding a pistol consistent with the design of a Glock.

- January 14, 2020 – An image of what appears to be an FN Pistol with a loaded magazine with ammunition consistent with that of an FN Five-Seven pistol.

- February 14, 2020 – A photo depicting what appears to be an AK style pistol containing a high capacity magazine. The words, "I stay with that sword like I'm dark vader just know I ain't running" are depicted in the caption.

- March 2, 2020 – An Instagram Live story depicting what appears to be a magazine containing ammunition. During the video, while showing the firearm magazine, Defendant is heard saying "you know we ridin' man, yeah, fuck is you talkin' about."

- • On or about June 1, 2020 – Defendant is shown posing with a firearm with the physical characteristics consistent with an FN Five-Seven pistol.

- • June 10, 2020 – Defendant is identified at multiple points during the course of the Instagram story, and multiple items consistent with the design and characteristics of a Micro Draco AK-variant firearm, a Remington Tac-10 shotgun, and a Spiker Tactical AR-15 variant firearm are shown.

ECF No. 27, PageID 114-15 and Ex. A, ¶¶ 11-15, 18, 21, 22. Defendant also posted about marijuana for sale: (a) on February 21, 2020, pictures and prices of marijuana; (b) on February 27, 2020, image of marijuana for sale; and (c) on June 26, 2020, marijuana for sale. *Id.* at ¶¶ 16-17, 23.

The Government states that when Defendant was the victim of a shooting on March 12, 2020, in the area of 11816 Flanders, Detroit, Michigan, he drove himself to the Detroit Police Department's Ninth Precinct. Defendant was transported to the hospital and hospitalized as a result of his injuries, and his vehicle was towed to a secure facility. An inventory of the vehicle was performed by law enforcement and a loaded FN magazine containing 30 rounds of ammunition was located. The Government notes that Defendant posted a photograph holding similar ammunition (January 14, 2020 Instagram post) and holding an FN 5.7 pistol (June 1, 2020 Instagram post). Five cellular devices also were located in the vehicle.

Defendant moved from a residence in Detroit to an apartment in Canton, Michigan, in April 2020 (the "Canton apartment). Defendant resided at the Canton apartment with his fiancée, and this is where he requested and was approved to reside when his initial detention order was revoked at a hearing on September 10, 2020. *See* ECF No. 20). On July 22, 2020, Magistrate Judge Elizabeth Stafford authorized the

search of that apartment, authorizing a serach for guns, drugs, and cellular telephones that were evidence of Defendant's alleged illegal weapons possession and drug trafficking.

On July 23, 2020, ATF agents executed a federal warrant at the apartment, where they found both Defendant and his fiancée. During the search of the residence, ATF personnel seized an Interarms firearm from the dining area of the apartment, located in plain view on a shelf. The Interarms firearm was loaded with a 30 round magazine that was taped to another loaded, 30 round magazine. The Government represents that a user of that gun could remove one clip when it was spent, reverse the taped together magazines, and reload with the other in a matter of seconds. Contemporaneous with the search of the residence, law enforcement also stopped a Dodge Ram which agents had regularly seen Defendant drive in the past, although someone other than Defendant was operating the vehicle at the time of the stop. When agents executed a search warrant on the Ram, they seized an FN 5.7 handgun that was hidden in an air vent immediately adjacent to the steering wheel of the vehicle. This gun was consistent with the photograph of the FN agents saw in Defendant's Instagram account. During an interview, Defendant allegedly stated, "I see your mans got my FN bro, I already seen he got the gun out of the car." The Interarms firearm and the FN 5.7 handgun are the firearms that serve as the basis for the felon in possession of a firearm count with which Defendant is charged.

**III.   Applicable Law**

In considering Defendant's challenge to the search warrant's validity, the Court must determine whether a sufficient showing has been made that a firearm would be found in the Canton apartment. *See, e.g., United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004). The Government has the burden of establishing that it provided "reasonable grounds for belief" and established a "fair probability," based upon the totality of circumstances, that a firearm would be found there. *United States .v Bennett*, 905 F.2d 931, 934 (6th Cir. 1990); *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1990); *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001).

The connection between Canton apartment (the place to be searched) and the evidence of some criminal activity must be more than "vague" or "generalized," which requires a fact intensive inquiry. *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). The "totality of the circumstances" must be examined. *Illinois v. Gates*, 462 US 213, 238 (1983). The Government maintains that the search warrant was supported by probable cause because, "given all of the circumstances set forth in [the] affidavit…there [was] a fair probability contraband or evidence of a crime [would] be found in a particular place." *Id.*

### IV.    Analysis

Defendant argues that the search of the Canton apartment was illegal because the search warrant lacked probable cause to search those premises. Defendant contends that there was not a sufficient nexus between the Canton apartment and the evidence sought. He states that his alleged possession of firearms or drugs on prior

5

unknown occasions and locations did not support a conclusion that they would be found at the Canton apartment.

Defendant states that the affiant only made a generalized claim that Defendant was (as opposed to is) "a drug dealer for many years," with no time frame specified that would serve as indicia for reliability and credibility of that information. Defendant argues that the Instagram "stories" referenced did not have any time or place context, and that photos saved on a phone can be uploaded from the past – posted photos are not necessarily current – such that the date the ATF agent viewed them is virtually meaningless.

Defendant insists that none of the photographs/Instagram posts allow for any connection to the Canton apartment, which means that law enforcement and courts cannot infer that contraband will be found in a defendant's home. *See Brown*, 828 F.3d at 384. He asserts that the firearm photographs in the Instagram posts were not in temporal proximity to the warrant application, except for the video on June 10, 2020 that has no indication of when it was taken. Defendant contends that the absence of any information regarding the dates the photos and videos were taken renders stale the information in them, which means they cannot be used in a probable cause determination. *United States v. Grubbs*, 547 U.S. 90 (2006); *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009); *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006).

Defendant argues that the photos and videos were taken by third parties who could be the actual possessors of the firearms, and the marijuana posts are

meaningless because commercial marijuana is now legal for sale in Michigan. Finally, Defendant notes that the affiant swore only that Defendant was "staying there" (at the Canton apartment), without any detail regarding the leaseholder or Defendant's fiancée.

    The Government counters that the underlying affidavit contained facts from five different sources that, taken together and with the opinion of the investigator, established more than a "minimally sufficient nexus" between the firearms possessed by Defendant and the Canton apartment.  First, the affidavit indicated that a reliable informant who had known Defendant for about five years also knew that, at least prior to December 2019, Defendant was a large-scale drug trafficker and had personally seen him in possession of heroin, methamphetamine, and marijuana. (¶¶ 7-8). The informant had observed Defendant in possession of firearms on many occasions. (¶ 9).  Second, the affidavit averred that from September 2019 through June 2020, Defendant sold marijuana and boasted about his possession of firearms through his social media, as documented above.  In a post dated September 24, 2019, where Defendant was holding a gun, he wrote: "Lately I've been feeling like the old me." (¶ 11).  On a December 15, 2019 post, when he was holding a firearm with a high capacity magazine, Defendant commented that he "had enough shots now." (¶ 12). On February 14, 2020, he posted a picture of himself with an AK style pistol containing a high capacity magazine and commented, "I stay with that sword like I'm dark vader just know I ain't running." (¶ 15).  On March 2, 2020, he posted an

Instagram Live video to his account in which he says " "you know we ridin' man, yeah, fuck is you talkin' about" while holding a magazine with ammunition. (¶ 18). On June 10, 2020, Defendant posted pictures of himself holding three different assault-style rifles. (¶ 22).

The affiant also swore that on March 12, 2020, Defendant was in possession of ammunition, as his legally searched vehicle contained a magazine that was loaded with 30 rounds of ammunition from an FN pistol, which is the same style pistol Morgan was in possession of in his June 1, 2020 Instagram post. (¶ 21). The affidavit averred that on July 2, 2020—less than three weeks prior to the authorization of the warrant—Defendant's sister reported that he was in possession of a firearm and actually fired it at her. (¶ 24).

The affidavit indicated that Defendant lived in the Canton apartment, something that the informant told the affiant on June 10, 2020 (stating that Defendant was staying in the area of Canton, Michigan, "somewhere off Joy Road" (¶ 25), information corroborated by surveillance of Defendant near the residence in June and July, including the day before the magistrate judge authorized the warrant. (¶¶ 28 – 35). The Government contends that this information showed that Defendant lived at the residence to be searched when he was posting pictures of himself with guns (¶ 22), advertising marijuana (¶ 23), and when he shot at his sister. (¶ 24)

The ATF agent claimed that in the affidavit that, in his five years of experience and training, those who illegally possess firearms often do so in their homes, where they are easily accessible. (¶ 37) He noted that Defendant posted images of his guns

to his Instagram account, something that is commonly done with a cellphone (¶ 40), and represented that guns are normally retained for extended periods. (¶ 39)

The Government dismisses Defendant's argument that the photographs in the affidavit fail to establish a nexus between his illegally possessed firearms and his residence. The Government contends that the affidavit established that Defendant illegally possessed guns for years and warned others that he "stay[ed]" with them. The affidavit also includes the opinion of the affiant, who had five years of experience investigating gun crimes, that individuals like Defendant who illegally possess firearms commonly store them at in their residence in order to easily access them. The Government contends that this was a reasonable opinion for the affiant, and a legally permissible inference for the magistrate judge, to draw. Citing *Williams*, 544 F.3d at 688 ("Much like a bank robber would keep the proceeds and instrumentalities of his robbery in his home, so too could Williams be expected to keep the instrumentalities of his criminal activity at his residence.").

The Government states:

> The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime.

*United States v. Green*, 634 F.2d 222, 226 (5th. Cir. 1981). For that reason, "it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there." *Williams*,

544 F.3d at 686-87; *see also United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985) (noting that a court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense). The Government asserts that the totality of these facts, opinion, and inference establishes a sufficient nexus between the guns and Morgan's residence.

The Government questions Defendant's reliance on *Brown* for the proposition that magistrate judges cannot infer that drug dealers keep evidence of their drug dealing at home. It states that the crime being investigated in this case was felon in possession of a firearm and, unlike a drug trafficking offense, this type of crime is not a one-time occurrence but instead "a continuing offense that ceases only when the felon relinquishes possession." *United States v. Goodwin*, 552 F. App'x. 541, 545 (6th Cir. 2014). The Government argues that guns are useful to their owners when they are accessible to their owners and kept nearby for that reason, especially for felons who retain their firearms because they are unable to obtain firearms through legitimate business dealing. *United States v. Bland*, No. 18-CR-20555, 2018 WL 6171609, at *2 (E.D. Mich. Nov. 26, 2018). The Government contends that the magistrate judge could properly infer that Defendant possessed his guns where they would be useful to him–where he resided.

The Government also rejects Defendant's contention that the affidavit is stale because the photos could have been taken at some point in the past and uploaded on the dates set forth in the warrant. It claims that argument ignores the other information in the affidavit, including Defendant's possession of a gun on July 2, 2020, when he

shot at his sister and his description of several of the photos. As discussed above, (a) in September 2019, Defendant posted a picture of himself with a gun and explained "Lately I've been feeling like the old me" (¶ 11); in December 2019, he posted a picture of himself holding a rifle with a high capacity magazine and stated that he "had enough shots now" (¶ 12); and (c) in March 2020, ten days before he was shot, he posted a picture of himself again with a gun and cautioned others that he "stay with that sword like I'm dark vader just know I ain't running" (¶ 15). The Government asserts that the words "lately" and "now" provide the temporal context that Defendant argues is missing and warning others that he "aint running" and "stay[s]" with a "sword" while posing with a gun only makes sense in the present tense. As "firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time," *Goodwin*, 552 F. App'x. at 544 (quoting *United States v. Pritchett*, 40 F. App'x. 901, 905-06 (6th Cir. 2002)), it maintains that a common sense reading of Defendant's comments, together with the pictures, his long history of possessing guns, and his possession of a gun just three weeks before the warrant, demonstrates that the affidavit was not stale.

Defendant suggest that, although the Government's reliance on *Goodwin* is misplaced, the following test set forth by that court is worthy of consideration:

1. the character of the crime (chance encounter in the night or regenerating conspiracy?);

2. the criminal (nomadic or entrenched?);

    3.      the thing to be seized (perishable and easily transferable or of enduring utility to its holder?); and

    4.      the place to be searched (mere criminal forum of convenience or secure operational base?).

In considering those four factors, however, the Court finds that each of them favors finding the search warrant valid. The character of the crime is felon in possession and there is substantial evidence to support probable cause that Defendant possessed one or more firearm(s), including the Instagram post on June 10, 2020 and Defendant shooting a firearm at his sister on July 2, 2020. Defendant was not nomadic and had begun to stay and live at the Canton Apartment in April 2020, in essence having a secure operational base, not a random place. The firearm(s) were not easily (legally) transferable to or obtainable for Defendant and the affiant averred that felons tend to retain firearms because it is illegal to possession or obtain them.

Even if the Court concludes that the warrant was invalid, it must then determine whether there was good faith by the Government in executing the warrant. As Defendant states, evidence is excludable if (1) the affidavit supporting the search warrant contains knowing or reckless falsity; (2) when the issuing magistrate wholly abandoned her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid. Citing *United States v. Leon*, 468 U.S. 897 (1984); *United States v. Helton*, 314 F.3d 812 (6th Cir

2003) (reversing district court's application of *Leon* because officers necessarily lacked reasonable belief there was probable cause).

Defendant contends that the good faith exception does not apply in this case. He argues that the agent's lack of candor regarding the Instagram story platform and cell phone operation, as well as the Magistrate's evident failure to make an essential inquiry, implicate grounds for exclusion in addition to the objective unreasonable belief by the agent and the warrant's facially deficient nature.

The Government argues that the good faith should apply, if such analysis is necessary. It states that the judge issuing the warrant—not the officer applying for one—has responsibility for determining whether probable cause exists, and the rule excluding unlawfully obtained evidence has little deterrent effect when applied to objectively reasonable law enforcement activity. Citing *Leon*, 468 U.S. at 919-22; *United States v. McCoy*, --- F.3d ---, 2018 WL 4496396, *3 (6th Cir. 2018). Any benefit derived from excluding evidence in these situations does not justify the substantial costs of exclusion. *Id*. To determine whether the *Leon* good-faith exception applies, a court must decide "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23.

It is well-established that the application must have provided "a minimally sufficient nexus between the illegal activity and the place to be searched." *Brown*, 828 F.3d at 385 (citations omitted). The affidavit need not establish a "substantial basis," only "some connection, regardless of how remote it may have been—some modicum

of evidence, however slight—between the criminal activity at issue and the place to be searched." *United States v. White*, 874 F.3d 490, 497 (6th Cir.2017) (citation and internal quotations omitted). "[R]easonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *Id*. at 500.

The Court finds that reasonably well-trained officers would infer that it was likely that the firearms that Defendant possessed in the photograph(s) would be kept where he resided. This inference has been allowed by courts regularly, that some criminals store evidence of their crimes in their residences even though no criminal activity or contraband is observed there. *See Williams*, 544 F.3d at 688; *O'Conner*, 723 F. App'x. at 310. *See also United States v. Sneed*, 385 F. App'x. 551, 559–60, (6th Cir.2010) ("we believe that the good faith exception applies here. To begin with, the court has noted that reasonably well trained officers may infer a nexus between a place to be searched and items sought, even when the affidavit fails to establish probable cause."). Based on this authority, and because the affiant did not knowingly or recklessly omit material information from the affidavit, the good faith exception applies. *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006). The Court finds that the affidavit in this case was not so lacking in indicia of probable cause as to render it arbitrary.

## V.     Conclusion

For the reasons stated above, the Court finds that the Government has shown that there was probable cause to support the search warrant.

Accordingly,

IT IS ORDERED that the Motion to Suppress [ECF No. 24] is DENIED.

Dated: October 12, 2022                              s/Denise Page Hood
                                                     DENISE PAGE HOOD
                                                     UNITED STATES DISTRICT JUDGE